UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Anita Mejia,<br><br>      Plaintiff,<br><br>  –v–<br><br>United States of America, et al.,<br><br>      Defendants. | 13-cv-5676 (AJN)<br><br>MEMORANDUM &<br>ORDER |

ALISON J. NATHAN, District Judge:

  This is a slip-and-fall case brought by Plaintiff Anita Mejia against the United States and the United States Coast Guard ("Coast Guard") under the Federal Torts Claim Act ("FTCA"). *See* 28 U.S.C. § 1346(b). Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. *See* Dkt. No. 83. For the reasons below, their motion is GRANTED.

  I.  **BACKGROUND**

    A.  **Procedural History**

  Plaintiff Mejia is a resident of North Carolina. *See* Compl. ¶ 4. During the afternoon of May 27, 2015, on a visit to New York City, Mejia was walking in Battery Park when she tripped and fell along the sidewalk adjacent to a building at One South Street, sustaining severe and permanent injuries. *Id.* ¶¶ 9-10. On August 14, 2013, Mejia brought claims for negligence against the United States, the Coast Guard, the City of New York, the New York City Department of Transportation, and the Battery Park City Authority. *See* Dkt. No. 1.

  On November 13, 2013, the United States and Coast Guard filed a motion to dismiss for lack of subject-matter jurisdiction. *See* Dkt. No. 13. Shortly thereafter, on December 27, 2013,

1

the United States and Coast Guard also filed a motion to dismiss the crossclaim of the City of New York, again on the basis of lack of subject-matter jurisdiction. *See* Dkt. No. 26. On January 31, 2014, the Court held an Initial Pretrial Conference. *See* Dkt. No. 32. At that conference, the Court concluded that there were outstanding factual issues essential to resolution of the various motions to dismiss and therefore administratively denied the motions pending discovery. *See* Dkt. No. 41. Further, declining to bifurcate discovery in the case, the Court denied the United States and Coast Guard's request to limit discovery to jurisdictional issues. *Id.*

After a period of discovery, on July 30, 2014, a stipulation was entered dismissing with prejudice the claims against the Battery Park City Authority. *See* Dkt. No. 71. The Court held a status conference on August 20, 2014 and set November 7, 2014 as the deadline for expert discovery. *See* Dkt. No. 80. After the close of discovery, the United States and the Coast Guard renewed their motion to dismiss the complaint for lack of subject-matter jurisdiction. *See* Dkt. No. 83. While that motion was in the process of being briefed, on December 9, 2014, the Court entered a stipulation dismissing with prejudice the claims against the City of New York and the New York City Department of Transportation. *See* Dkt. No. 87. Accordingly, the United States and the Coast Guard are the only defendants remaining in the case.

### B. Relevant Facts[1]

The parties do not dispute that neither the United States nor Coast Guard own the sidewalk where Plaintiff was allegedly injured. *See* Declaration of Lt. Cmdr. Brian Maggi ("Maggi Declaration") ¶ 4; Opp. at 2. Rather, all parties recognize that the City of New York owns the sidewalk. *See* Declaration of Caleb Hayes-Deats ("Hayes-Deats Declaration"), Ex. D at 11-12. Adjacent, however, to the spot where Mejia allegedly fell is a Coast Guard facility

---

[1] Unless otherwise noted, the following facts are undisputed by the parties.

located at One South Street (the "Battery Building"). *Id.*, Ex. A at 1; Opp. at 2. City ordinance states that it "shall be the duty of the owner of real property abutting any sidewalk . . . to maintain such sidewalk in a reasonably safe condition." N.Y.C. Admin. Code § 7-210. At least at this juncture, the parties do not dispute the applicability of the ordinance to the Coast Guard facility in question and, accordingly, there is no dispute that the Coast Guard had a duty to maintain the sidewalk in a reasonably safe condition. *See, e.g., Richards v. Pathmark Stores, Inc.*, 07-cv-1790 (THK), 2008 WL 3165582, at *6 (S.D.N.Y. Aug. 6, 2008) (noting that § 7-210 creates a duty for the landowner abutting a sidewalk). Indeed, discovery revealed that the Coast Guard hired a contractor to perform basic upkeep on the sidewalk, including sweeping, snow and ice removal, and cleaning out plants. *See* Opp., Ex. A at 37:2-6; Ex. B at 46:2-18. However, despite the routine upkeep performed by the Coast Guard, the sidewalk adjacent to the Battery Building became cragged, creating a vertical grade differential that allegedly caused Plaintiff to trip. *See id.*, Ex. C at 2; Ex. E.

Mejia claims that the United States and Coast Guard negligently breached their duty under N.Y.C. Admin. Code § 7-210 by failing to fix the alleged defect in the sidewalk. *See* Compl. ¶¶ 9, 14. Defendants contend that the decision to ameliorate the condition falls within the discretionary function exception ("DFE") and, in support of that argument, provide copious detail on Coast Guard protocol for repairing property. For instance, the Coast Guard explains that the Battery Building facility falls within the jurisdiction of Coast Guard District One, which extends from Maine to northern New Jersey. *See* Hayes-Deats Decl., Ex. E at 8:18–19:12. Within District One, any repair of property not owned by the Coast Guard, or that will cost more than $5,000, must be approved by the Civil Engineering Unit in Providence, Rhode Island ("CEU Providence"), which supervises all Coast Guard engineering units in District One. *Id.* at

3

16:3–17:22; 109:12–110:8. Minor maintenance costing less than $5,000, however, can be handled by local Coast Guard units. *Id.*, Ex. H at 2-64.

The parties dispute whether repairing the sidewalk flags at issue would have constituted minor maintenance as defined by Coast Guard policy. Plaintiff contends that repairing the sidewalk flag in question would have cost less than $5,000, therefore constituting minor maintenance and making irrelevant any discretionary considerations required for larger projects. *See* Opp. at 4. Conversely, the Coast Guard estimates that repairing the sidewalk adjacent to the Battery Building would have required replacing approximately fifty sidewalk flags at a cost of over $50,000. *See* Hayes-Deats Decl., Ex. E at 88:3-23. Resolution of this factual dispute is inappropriate at the motion to dismiss stage, however its significance is mooted by the uncontested fact that the Coast Guard, regardless of cost and as a matter of policy, does not consider repairs to property it does not own to constitute minor maintenance. *Id.* at 82:4-18. Accordingly, regardless of cost, repair of the sidewalk flag in question, which was owned by the City, would have required the approval of CEU Providence.

Requests to perform repairs are sent to CEU Providence in the form of a Shore Station Maintenance Request ("SSRM"). *Id.*, Ex. E at 19:5-11. Before a SSRM is referred to CEU Providence, the local Coast Guard station must identify a "facility issue that . . . has an impact on operations." *Id.* at 18:18-25. If CEU Providence then receives a SSRM concerning property not owned by the Coast Guard, it first contacts the property owner to request that it perform the repair. *Id.* at 17:2-6. If the property owner refuses to conduct the repair, then the Coast Guard determines whether to complete the repair by applying a four-part test established by the Government Accountability Office ("GAO").[2] *Id.*, Ex. I at 13-214. The GAO test requires the

---

[2] As part of a volume on appropriations law, the GAO has published a document entitled "Improvements to Property Not Owned by the Government," which provides guidance on when it is appropriate for public funds to

4

Coast Guard to first consider whether the repair is required to meet an "essential need . . . of Coast Guard operations." *Id.*, Ex. E at 17:11-15; Ex. I at 13-216. Second, the Coast Guard must conduct a review to ensure that the cost associated with the repair is reasonable. *Id.*, Ex. E at 17:15-18; Ex. I at 13-216. Third, the Coast Guard ensures that it is the primary beneficiary of any improvement to the property. *Id.*, Ex. E at 17:18-20, Ex. I. at 13-216. Fourth, in order to protect its interest in any improvement, the Coast Guard attempts to negotiate an easement or lease in the property with its owner." *Id.*, Ex. E at 17:20-22. Ex. I. at 13-218. Finally, after the Coast Guard has completed the four-part test, the SSRM is sent to the Legal Services Command, which reviews the request to determine whether the Coast Guard is in fact authorized to make the repair. *Id.*, Ex. E at 97:11-24. After Legal Services Command approves the requested repair, performance occurs only when funding becomes available through what is known as the AFC-43 process, which requires units within Coast Guard District One to submit a priority list of maintenance and repair projects. *Id.* at 86:4-6; Ex. G at 2-50; Ex. H at 2-61. *See also* Maggi Decl., Ex. B at 3. CEU Providence has the prerogative to prioritize certain projects through consideration of "local factors impacting Coast Guard missions in the district," their "capacity to execute," and "unit needs." *See* Maggi Decl., Ex. B at 3.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion brought under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction to hear the case. *See* Fed. R. Civ. P. 12(b)(1). Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines

---

spent improving non-public land. *See* Hayes-Deats Decl., Ex. 1. The document emphasizes the rule that public money should not be spent to benefit private landowners, although it acknowledges that "the rule is not and never has been particularly rigid." *Id.* at 13-215.

that it lacks the constitutional or statutory power to adjudicate the case. *See id.*; *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). To survive a Rule 12(b)(1) motion to dismiss "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted); *Gertskis v. U.S. E.E.O.C*, 11-cv-5830 (JMF), 2013 WL 1148924, at *4 (S.D.N.Y. Mar. 20, 2013). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*; *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). And "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." *Frisone v. Pepsico Inc.*, 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005) (quoting *Augienello v. Fed. Deposit Ins. Corp.*, 310 F. Supp. 2d 582, 587 (S.D.N.Y. 2004). *See also Qian Jin Lin v. Anderson*, 12-cv-0451 (AJN), 2013 WL 3776249, at *2 (S.D.N.Y. July 18, 2013).

### B. The Discretionary Function Exception to the FTCA

Under the traditional principles of sovereign immunity, the United States and its executive agencies are immune from suit except to the extent they have waived their immunity. *See Coulthurst v. United States*, 214 F.3d 106, 108 (2d Cir. 2000). *See also United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal alterations omitted). The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against

the United States under specified circumstances." *Hamm v. United States,* 483 F.3d 135, 137 (2d Cir. 2007) (quotation marks omitted). Specifically, the FTCA provides that the federal courts

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

However, the DFE operates as a significant limitation on this waiver of immunity and excepts the scope of the FTCA's from

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The DFE is "a form of retained sovereign immunity. As a result, the [FTCA's] waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions." *Reichhart v. United States,* 408 F. App'x 441, 443 (2d Cir. 2011) (quoting *In re World Trade Ctr. Disaster Site Litig.,* 521 F.3d 169, 190 (2d Cir. 2008)). Two Supreme Court cases control the application of this exception to the FTCA. *See Berkovitz v. United States,* 486 U.S. 531 (1988); *United States v. Gaubert,* 499 U.S. 315 (1991). The so-called *Berkovitz-Gaubert* test holds that the DFE applies "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or

7

choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst,* 214 F.3d at 109.

### III. DISCUSSION

The Court now turns to the substance of the Defendants' motion. First, it will address Defendants' request to dismiss the Coast Guard as a party. It then turns to application of the two-prong *Berkotvitz-Gaubert* test to determine whether the Coast Guard's conduct falls within the DFE.

#### A. The Coast Guard Must Be Dismissed as a Party

Peculiarly buried in a footnote, Defendants contend that the claims against the Coast Guard must be dismissed because the FTCA does not waive sovereign immunity for executive agencies. *See* Mem. at 9 n.5. Plaintiff fails to address this issue in her opposition, a point raised by the Defendants, again, in a footnote. *See* Reply Mem. at 2 n.1. Defendants therefore argue that Mejia has conceded the point.

Regardless of whether Plaintiff intended to cede the point or merely overlooked it, it is well-established that the FTCA bars suit against agencies *eo nomine.* To wit, 28 U.S.C. § 2679(a) provides that "the authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency or claims which are cognizable under section 1346(b)" of the FTCA. *See also Bakowski v. Kurimai,* 98-cv-2287 (DJS), 2000 WL 565230, at *2 (D. Conn. Mar. 20, 2000) *aff'd,* 387 F. App'x 10 (2d Cir. 2003). Accordingly, "[t]he FTCA precludes tort suit against federal agencies and makes the only proper federal institutional defendant in such an action the United States." *Sereika v. Patel,* 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (citing *Rivera v. United States,* 928 F.2d 592, 609 (2d Cir. 1991)). *See also C.P. Chem. Co. v. United States,* 810 F.2d 34, 37 n.1 (2d Cir.1987) ("The

FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself."); *accord F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994). The Coast Guard is therefore dismissed as a party to the action, which leaves the United States as the sole remaining defendant.[3]

### B. The Discretionary Function Exception Bars Plaintiff's Claim

The Court turns now to the application of the DFE to this case. As an initial matter, however, Plaintiff puts forward an inchoate argument that the Court need not even reach the issue of the DFE because Congress intended the FTCA to waive sovereign immunity for all common law torts. *See* Opp. at 12. Accordingly, because Mejia alleges a "direct claim of negligence" against the Government, she argues that the DFE does not apply. *Id.* This argument has no basis in law and neglects the fact that the DFE retains sovereign immunity against "*[a]ny claim* based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added). Indeed, in addition to finding no support for the proposition that direct claims of negligence are shielded from the DFE, the Court found numerous cases concluding that direct negligence claims were barred by the DFE. *See e.g.*, *Savage v. City of Memphis*, 14-6501, 2015 WL 4645664, at *3 (6th Cir. Aug. 6, 2015) (finding "[p]laintiffs' direct-negligence claims squarely within the discretionary function exception.") (internal quotes removed); *Hagy v. United States*, 976 F. Supp. 1373, 1380 (W.D. Wash. 1997) ("Because the discretionary function exception applies, the court need not reach the issue of whether plaintiff's direct negligence claims are cognizable under applicable state law.")

---

[3] The Court continues to refer to the Coast Guard in the remainder of the Memorandum & Order, but only in its capacity as an agency of the United States.

Plaintiff's argument that certain run-of-the-mill torts do not implicate the DFE is better started in reference to the second prong of the *Berkovitz-Gaubert* test, which considers whether the discretionary act was grounded in policy concerns. However, Plaintiff may not put the cart before the horse and simply presume that, based on the nature of the tort, the DFE is inapplicable. The Court therefore proceeds to the two-pronged *Berkovitz-Gaubert* test.

### 1. The Coast Guard's Conduct Involved an Element of Judgment or Choice

The first prong of the *Berkovitz-Gaubert* test looks to whether the alleged negligent acts were discretionary, in "that they involve an 'element of judgment or choice' and are not compelled by statute or regulation." *Coulthurst*, 214 F.3d at 109 (quoting *Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536). This requires the Court to "carefully review[] the statutory and regulatory scheme governing" the alleged conduct. *Berkovitz*, 486 U.S. at 537.

Defendants have sufficiently demonstrated that the determination of when, or whether, to repair a sidewalk adjacent to a Coast Guard facility is a decision reserved to the agency's discretion. As an initial matter, the text of the federal statutory and regulatory scheme governing sidewalk repair is non-mandatory. For instance, 40 U.S.C. § 589(a) states that an executive agency "may install, repair, and replace sidewalks around buildings, installations, property, or grounds" that are under the agency's control and owned by the United States. Similarly, 41 C.F.R. § 102-74.580, conveniently titled "Who decides when to replace a sidewalk?", states that:

> Federal agencies, giving due consideration to State and local standards and specifications for sidewalks, decide when to install, repair or replace a sidewalk. However, federal agencies may prescribe other standards and specifications for sidewalks whenever necessary to achieve architectural harmony and maintain facility security.

These provisions are discretionary, stating that the Coast Guard "may" undertake repairs and granting the agency wide latitude to "decide when" such repair would be appropriate after "giving due consideration" to local standards and specifications. *See, e.g.*, *Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (collecting cases for proposition that 'may' implies a permissive, rather than mandatory, instruction). *Cf. United States v. Shand*, 739 F.3d 714, 715 (2d Cir. 2014).

The Coast Guard's own internal policies reinforce the conclusion that the decision is fundamentally discretionary. For instance, before even submitting the SSRM necessary to initiate repairs, Coast Guard policy requires the requesting unit to identify a "facility issue that . . . has an impact on operations." *See* Hayes-Deats Decl., Ex. E at 18:15-25. Determining what facility issues are likely to have an impact on Coast Guard operations requires an "element of judgment or choice" in weighing competing priorities relative to their costs.

After a Coast Guard unit has determined that a facility issue has some impact on operations, it must next consider the four-part GAO test in determining whether to proceed with the repair. *Id.*, at 17:2-25; Ex. I. This test contains a number of discretionary elements. For instance, the second consideration is whether or not the cost of repair is reasonable. *Id.*, Ex. I at 13-217. As the GAO explains, this consideration is "relative" and it "is not enough to just look at the dollar amount in a vacuum." *Id.* Rather, the Coast Guard must weigh the cost against a number of factors, including "the type of improvement involved, the issues to which it is it to be put, the length of the government's contemplated use measured against the residential value, if any, to the owner." *Id.* This balancing of considerations clearly requires an "element of judgment or choice." *See Young v. United States*, 12-cv-2342 (ARR) (SG), 2014 WL 1153911, at *14 (E.D.N.Y. Mar. 20, 2014). Finally, even after a proposed repair has met the four-part

GAO test and been approved by the Coast Guard's Legal Services Command, its level of priority may be impacted by CEU Providence's prerogative to "make adjustments for local factors impacting Coast Guard missions in the district." Maggi Decl., Ex. B at 3.

Mejia's response to this is primarily to emphasize that, because no SSRM was ever submitted in reference to the sidewalk adjacent to the Battery Building, "it follows that no Coast Guard employee undertook any form of conduct which involved the exercise of policy judgment." *See* Opp. at 14. Beyond the illogic of this argument—a Coast Guard employee may simply have determined no SSRM was appropriate under the circumstances—it is irrelevant to the application of the DFE. Whether or not the Coast Guard negligently failed to repair the sidewalk goes to the merits of Plaintiff's claim, rather than determining whether the sort of decision at issue is discretionary. *See Gotha v. United States*, 115 F.3d 176, 181 (3d Cir. 1997) ("the action or inaction goes more to the issue of negligence rather than whether the issue of policy discretion is implicated"); *Molchatsky v. United States*, 713 F.3d 159, 161 (2d Cir. 2013) (SEC's "regrettable inaction" in failing investigate Bernie Madoff fell within DFE).

In sum, after thorough review, it is apparent that the statutes, regulations, and policies standards governing maintenance of Coast Guard facilities leave considerable "room for choice or judgment." *Gaubert*, 499 U.S. at 324. Accordingly, the Court concludes that the first prong of the *Berkovitz-Gaubert* test is met.

### 2. The Coast Guard's Decision Was Susceptible to Policy Analysis

The second question the Court must consider is whether the Coast Guard's discretionary decision not to repair the sidewalk was "grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst*, 214 F.3d at 109. As an initial matter, the Supreme Court has counseled that "if a regulation allows the [agency] discretion, the very existence of the

regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. Accordingly, "to survive a motion to dismiss, [a plaintiff] must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.* at 324-25. The Government therefore benefits from the strong presumption that their decision not to repair the sidewalk involved consideration of the policies underlying the statutory and regulatory scheme at issue. Mejia bears the burden of dispelling this presumption.

Nonetheless, the Court is cognizant of case law supporting the proposition that an agency's discretionary acts do not implicate policy when the acts concern only "mundane, administrative, garden-variety, housekeeping" problems. *See Gotha*, 115 F.3d at 181. In *Gotha*, the Plaintiff alleged that the Navy was negligent in not providing a handrail along a steep stairwell. *Id.* at 178. The Navy contended that the decision to install the railing implicated military, social, and economic considerations. *Id.* at 181. In rejecting the Navy's argument, the Third Circuit noted that such a broad reading of policy "could go to any decision by the Navy, from contracting for highly complex missiles to patching a hole in the floor of an office building." *Id.* The "proffered reasons" were of such "general application as to provide no assistance in determining whether the discretionary function exception" applied. *Id. See also O'Toole v. United States*, 295 F.3d 1029, 1036 (9th Cir. 2002) (DFE did not apply to routine maintenance "that would be expected of any other landowner"); *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995) ("The mere presence of choice—even if that choice involves whether money should be spent—does not trigger the exception.")

These cases highlight a difficult line-drawing problem implicit in the DFE, namely, that nearly all public acts involve some measure of discretion and some level of policy concern, even if that concern is primarily protecting the public fisc. *See, e.g., Kohl v. United States*, 699 F.3d 935, 943 (6th Cir. 2012) (discussing the "difficult to draw" line between the conduct intended to be shielded by the DFE and that for which the federal government may be liable). One helpful line-drawing tool can be gleaned from a series of cases in the Ninth and Third Circuits. In *ARA Leisure Servs. v. United States*, the Ninth Circuit held that the DFE did not apply to the National Park Service's failure to adequately maintain a road in Denali National Park, because that decision was not "a decision grounded in social, economic, or political policies." 831 F.2d 193, 195 (9th Cir. 1987). The National Park Service argued that decision not to repair the road was discretionary in light of severe budget constraints. *Id.* The Court rejected this argument, writing that "the fact that Park Service maintenance personnel were required to work within a budget" did not make the failure to maintain the road a discretionary function for purposes of the FTCA. *Id.* Later, in *Nat'l Union Fire Ins. v. United States*, the Ninth Circuit clarified its position on whether budget limitations constituted a legitimate policy consideration for purposes of the DFE. 115 F.3d 1415, 1421 (9th Cir. 1997). The panel wrote:

> In *ARA Leisure,* we said that the agency could not invoke the discretionary function exception based on budgetary considerations, but in *Kennewick* we said that it could. In this case we also say that it could. These cases can be reconciled; whether the government can take cost into account depends on the applicable statutes, regulations, and policies.

*Id.* As the Court further explained, budgetary concerns were not a legitimate policy concern in *ARA Leisure* because, in that case, the underlying regulatory regime mandated that the road be maintained in a certain condition. Namely, the applicable statute explicitly required the road to be maintained at a width of twenty-eight feet, yet the Park Service had allowed it to erode to

14

fourteen feet in width. Accordingly, the "regulation required the Park Service to maintain the road width and firmness, not to balance that goal against what it would cost." *Id.* Conversely, the regulatory regime at issue in *Nat'l Union* required the Army Corps of Engineers to "consider the 'relation of the ultimate cost of such work' to other factors in deciding whether to do work." *Id.* at 1422 (quoting 33 U.S.C. § 541). The Court concluded:

> Where a statute or policy requires a particular government action, it has no discretionary function immunity based on its choice to spend its money doing something else instead. But where a statute or policy plainly requires the government to balance expense against other desiderata, then considering the cost of greater safety is a discretionary function.

*Id.* See also *DeVito v. United States*, 95-cv-2349 (JS), 1997 WL 1038120, at *17 (E.D.N.Y. Sept. 5, 1997) (where "no statute of policy required the specific action called for by plaintiffs," the "Government therefore was free to weigh cost against other policy factors").

A pair of cases from the Third Circuit reinforces this principle. As explained, in *Gotha*, the Third Circuit concluded that no policy was implicated by the Navy's failure to install a handrail on a staircase. *See Gotha*, 115 F.3d at 181. In distinguishing both *Gotha* and *ARA Leisure*, the Third Circuit explained in *Mitchell v. United States* that application of the DFE requires a fact-specific inquiry in light of the particular statutory and regulatory regime at issue. 225 F.3d 361, 365 (3d Cir. 2000). It concluded that the National Park Service's failure to repair a road was protected by the DFE where the agency "had to balance the costs of the repairs" of certain road projects "with the other safety issues" before it. *Id.* at 366. Unlike in *Gotha*, "the Park Service ha[d] articulated several policy considerations that [were] implicated in the Park Service's decision." *Id.* Accordingly, the Park Service's "decision to determine its repair and design priorities came within the discretionary function exception to the FTCA." *Id.*

Turning to the present case, the Plaintiff has failed to overcome the "strong presumption" that the Coast Guard's maintenance decision (or nondecision) was rooted in policy concerns. Plaintiff relies primarily on general assertions concerning the purpose of the FTCA and the unsubstantiated claim that the repair could not implicate policy concerns because it would not be expensive. But Plaintiff's burden is to allege facts which would support a finding that the alleged conduct was not "grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. Instead of grappling with the regulatory regime at issue, Plaintiff dismisses it as irrelevant, stating that the applicable statutory and regulatory provisions "merely prescribe internal operational choice which involve[] no uniquely governmental consideration." *See* Opp. at 20. Even assuming, *arguendo*, that this characterization is accurate, whether a decision is operational has no bearing on whether it invokes policy concerns. *See Andrulonis v. United States*, 952 F.2d 652, 654 (2d Cir. 1991) (explaining that *Gaubert* rejected "any simplistic reliance on the dichotomy between planning-level actions and operational-level actions.") Rather, "[p]olicy considerations . . . remain the touchstone for determining whether the discretionary function exception applies." *Id.*

Indeed, even if Plaintiff had attempted to disaggregate the Coast Guard's alleged negligence from its stated policy concerns, a review of the statutory and regulatory scheme at issue reveals this case to be far closer to the *Nat'l Union* and *Mitchell* cases than *ARA Leisure* and *Gotha*. For instance, whereas the law in *ARA Leisure* explicitly required the National Park Service to maintain the road at a particular width, the framework governing the Coast Guard's sidewalk repair authority provides no strictly mandated standard. As in *Nat'l Union*, the underlying legal framework required the Coast Guard to "balance expense against other desiderata." *Nat'l Union Fire Ins.*, 115 F.3d at 1422. *See* Hayes-Deats Decl., Ex. I at 13-217

("The second standard—reasonableness of cost—is also relative. It is not enough to just look at the dollar amount in a vacuum. You must evaluate the cost against such factors as the type of improvement involved, the users to which it is to be put, and the length of the government's contemplated use . . ."). Similarly, whereas in *Gotha* the Court concluded that the Navy failed to demonstrate that it's decision was grounded in specific policy concerns, this case is more akin to *Mitchell*, where the agency "had to balance the costs of the repairs" of certain road projects "with the other safety issues" before it. *Mitchell*, 225 U.S. at 366.

Indeed, a review of recent AFC-43 projects within District One demonstrates that the Coast Guard was obliged to consider the priority of repairing the sidewalk adjacent to the Battery Building alongside other legitimate policy concerns, ranging from relatively mundane upkeep such as "Replace Overhanging Trees" and "Update Rusty Scupper Kitchen," to more explicitly maritime-related projects, such as "Manana Fog Signal Repairs," "Repair New Haven Harbor brkwtr"[4] and "Replace Halibut Rocks Light Tower." *See* Maggi Decl., Ex. D. Funded projects from within Sector New York specifically—the sector in which the Battery Building is located—included "Repair Romer Shoal Light" and "Increase Height of Pralls Island Channel Range." *Id.* Choosing between these projects "require[d] the alleged tortfeasor to consider and weigh competing policies in arriving at" any decision. *See Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982).

In sum, the Court is faced with a statutory scheme explicitly committing the decision to repair sidewalks to the agency, *see* 40 U.S.C. § 589(a), internal Coast Guard policy requiring consideration of, *inter alia*, cost reasonability, *see* Hayes-Deats Decl., Ex. I, and a myriad of other Coast Guard projects plainly touching upon operational and safety concerns of the agency.

---

[4] The Court presumes 'brkwtr' to be an abbreviation for the term 'breakwater'.

17

*See* Maggi Decl., Exs. C-H. Accordingly, the specific legal regime and facts of this case do not provide grounds for overcoming the "strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. To the extent this conclusion is unsatisfying, it bears remembering that "[t]he DFE is not about fairness, it is about power." *Molchatsky*, 713 F.3d at 162 (internal quotations removed). The DFE was intended to prevent judicial second-guessing of government decisions through the medium of tort litigation. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). Despite the line-drawing problem inherent in this exception, this case ultimately falls within the DFE's ambit. It is not the role of this Court to rebuke a decision, explicitly committed to the discretion of the Coast Guard, concerning the relative merits of competing policy goals. Accordingly, the Court lacks subject-matter jurisdiction over Plaintiff's claim and the case must be dismissed with prejudice.

## IV. CONCLUSION

The Defendants' motion is GRANTED. This resolves Dkt. No. 83. The Clerk of Court is instructed to terminate the case.

SO ORDERED.

Dated: Sept. 1, 2015
New York, New York

ALISON J. NATHAN
United States District Judge

18